1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

2

3  ------------------------------X
                           :

4  UNITED STATES OF AMERICA,   :
                           :  11-CR-00029 (LDW)

5           v.         :
                           :  June 22, 2011

6  ROBERT DITO,            :  Central Islip, New York
                           :

7               Defendant.  :
                           :

8  ------------------------------X

9

10          TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
          BEFORE THE HONORABLE ARLENE R. LINDSAY
              UNITED STATES MAGISTRATE JUDGE

11

12  APPEARANCES:

13

14  For the Government:      UNITED STATES ATTORNEY
                      BY:  SPIROS A. MOUSTAKAS, ESQ.
                      ASSISTANT U.S. ATTORNEY

15

16  For the Defendant:       THOMAS H. SPREER, ESQ.

17

18  Court Transcriber:       MARY GRECO
                      TypeWrite Word Processing Service
19                    211 N. Milton Road
                      Saratoga Springs, NY 12866

20

21

22

23

24

25

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

2

I N D E X

Defendant Sworn at Page 3

3

1          THE CLERK:  11-CR-29, <u>The United States of America v.</u>

2  <u>Robert Dito</u> .  Please state your appearances.

3          MR. MOUSTAKAS:  For the Government, Assistant United

4  States Attorney Spiros Moustakas.

5          MR. SPREER:  For Mr. Dito, Thomas Spreer, 100 Fire

6  Island Avenue, Babylon, New York.

7          THE COURT:  All right.  Gentlemen, sit down and let's

8  swear in the defendant.

9          THE CLERK:  Mr. Dito, would you please rise and raise

10  your right hand?

11  (AT THIS TIME THE DEFENDANT, ROBERT DITO, WAS SWORN.)

12          THE CLERK:  Thank you.

13          THE COURT:  All right.  Mr. Dito, take a seat and I'm

14  going to go over this allocution with you.  I understand that

15  you filled out what we call an allocution form which is a

16  series of questions and answers that you provided.  You know

17  what I'm talking about?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  And at the time you gave the

20  answers that are entered into this form, did you answer

21  truthfully and in the best of your ability?

22          THE DEFENDANT:  Yes, I did, Your Honor.

23          THE COURT:  Okay.  So now I'm going to go over this

24  form with you but you've been sworn in now so the answers that

25  you give me are going to be subject to the penalties of

4

1   perjury.  Do you understand?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Okay.  So let's just begin with your age.

4   How old are you?

5          THE DEFENDANT:  58 years old.

6          THE COURT:  How far did you get in school?

7          THE DEFENDANT:  I graduated college.

8          THE COURT:  In the past 24 hours, have you taken any

9   kind of anything that would not be considered food like drugs,

10  medications, pills, alcohol, anything like that?

11         THE DEFENDANT:  I take my daily vitamins.  That's all

12  I take in the morning.

13         THE COURT:  Vitamins?

14         THE DEFENDANT:  Yes.

15         THE COURT:  What type of vitamins?

16         THE DEFENDANT:  Like fish oil, things like that.

17         THE COURT:  Okay.

18         THE DEFENDANT:  Something for my knee just to keep

19  the joints --

20         THE COURT:  Anything that is supposed to, you know,

21  affect your thinking?

22         THE DEFENDANT:  No, Your Honor.  There's no

23  prescription drugs at all involved.

24         THE COURT:  Okay.  So is your mind clear here today?

25         THE DEFENDANT:  Yes.

5

1          THE COURT:  Mr. Spreer, have you discussed this

2     matter with your client?

3          MR. SPREER:  I have, Your Honor.

4          THE COURT:  And are you satisfied he's competent to

5     proceed today?

6          MR. SPREER:  Yes.

7          THE COURT:  Okay.  All right.  All right.  So Mr.

8     Dito, I want to just go over with you what your rights are

9     before I can accept this plea.  The first right you have is to

10    plead not guilty.  Do you understand that?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  Okay.  So I'm going to go over with you

13    what happens if you were to go forward with a plea of not

14    guilty because if you pled not guilty, under the constitution

15    and laws of the United States you would be entitled to a speedy

16    trial, a public trial, with your attorney, Mr. Spreer, there to

17    defend you and if you couldn't afford an attorney to defend you

18    in that action, the Court would be required to appoint you an

19    attorney so that you would always be entitled to a defense

20    lawyer to help you defend the case.  Do you understand that?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  Okay.  One of the things that would

23    happen is that at a trial you would be presumed to be innocent.

24    That means you have no burden at all.  That is it would be up

25    to the Government to prove your guilt beyond a reasonable doubt

6

1   by introducing competent evidence of your guilt.  It's their

2   burden to prove your guilt beyond a reasonable doubt.  So if

3   they didn't meet that standard of beyond a reasonable doubt,

4   then a jury would have a duty to find you not guilty.  Do you

5   understand that?

6             THE DEFENDANT:  Yes, Your Honor.

7             THE COURT:  Now, if there were a trial, the witnesses

8   that the Government has would have to appear here in court in

9   your presence.  They would have to testify in your presence,

10  and your attorney would have the right to cross examine the

11  Government's witnesses, he would have the right to object to

12  evidence that the Government might offer against you, and if

13  you decided you wanted to introduce some evidence, he would be

14  permitted to do that as well.  Do you understand that?

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  Now, if there was a trial, you have the

17  right to testify if you wanted to, but you wouldn't be

18  obligated to testify because you have the right not to

19  incriminate yourself.  So if you decided to go to trial and

20  didn't want to testify, then the Court would instruct the jury

21  that that decision was one of your rights and they couldn't

22  hold it against you, that is because you have the right not to

23  incriminate yourself.  Do you understand that?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  So what happens if you plead guilty and I

7

1  accept this plea is that you're going to give up your

2  constitutional rights to a trial and these other rights I've

3  just talked about.  You see, there would be no trial of any

4  kind and no right to appeal the question of whether or not

5  you're guilty of this count that you're pleading guilty to.  So

6  you're pleading guilty to Count 12.  So once you enter a plea,

7  that's it.  You can't then protest at some later date oh gee, I

8  really wasn't guilty of that crime.  Do you understand that?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Okay.  And the other thing that's going

11 to happen is that while you wouldn't be able to appeal the

12 question of whether or not you're guilty of that count or crime

13 that's charged, you would have a right to appeal the sentence

14 of the Court.

15             Now, I understand you have an agreement with the

16 Government; is that right?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Okay.  Let me just hear from the

19 Government's attorney, just if you would, just summarize for me

20 the agreement that's been entered.

21             MR. MOUSTAKAS:  Your Honor, the defendant will be

22 pleading guilty to Count 12 in the indictment.  Based on the

23 defendant's criminal history the Government estimates that the

24 adjusted offense level is 14 with a criminal history category

25 of 1 which has a range of imprisonment of 15 to 21 months.

8

1   However, because the defendant is pleading guilty today, the

2   Government will be moving for an adjusted offense level of 13

3   which has a range of imprisonment of 12 to 18 months.

4        THE COURT:  Okay.  And there's a waiver of the right

5   to appeal the sentence if it's 21 months or below?

6        MR. MOUSTAKAS:  Yes, Your Honor.

7        THE COURT:  Okay.  So Mr. Dito, let me just tell you

8   something else about your agreement here.  I told you that once

9   you enter a plea of guilty, that's it, you can't challenge the

10  question of whether or not you're guilty of the crime.  But the

11  other thing that's happened based on your agreement with the

12  Government is that you only have a very, very limited right to

13  appeal the sentence of the Court meaning that based on your

14  agreement with the Government, if Judge Wexler, who I believe

15  is the sentencing judge in this case, decides to sentence you

16  to a term of imprisonment of 21 months or less, you have no

17  right to appeal that sentence.  Do you understand that?

18       THE DEFENDANT:  Yes, Your Honor.

19       THE COURT:  So at the end of the day if you went to

20  Judge Wexler and he sentenced you to 21 months, that's it.

21  There's no appeal of anything in this case.  Do you understand

22  that?

23       THE DEFENDANT:  Yes, Your Honor.

24       THE COURT:  Okay.  So one of the other things that's

25  discussed in this Plea Agreement what are called the sentencing

9

1  guidelines and the Government elaborated on what they estimated

2  was your guideline range and with the adjustment down to 13 the

3  guideline range was estimated to be 12 to 18 months.

4          I just want to go over a little bit of that with you.

5  First of all, did you discuss the guideline range with your

6  attorney?

7          THE DEFENDANT:  Yes, I did.

8          THE COURT:  I don't need you to tell me what he said,

9  I just want to know you went over it with him.

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Okay.  And so as you probably know by

12  now, the guideline range is this mathematical computation that

13  is a calculation based on elements of the crime and elements of

14  your past.  That's what is taken into account.  Were there

15  victims?  How many victims?  What was the extent of the

16  gambling operation?  Have you done this before?  Do you have

17  health issues?  Is there a desire to prevent continuing

18  activity of this type?  All of those factors get a number.  And

19  it is estimated by the Government that at the end of the day

20  based on what they know about your case, that number is 13

21  which carries that term of imprisonment which I described as 12

22  to 18 months.

23         The thing that you need to know here, and I'm sure

24  you discussed this with your lawyer and he may have given you

25  his educated guess as to what the number is as well, and his

10

1   number may dovetail what the Government's estimate is.  What

2   you need to know is that if the Government is wrong, you can't

3   withdraw your plea.  So if the punishment turns out to be more

4   severe than you expected, you don't get to change your mind

5   about entering the plea of guilty.  It doesn't matter what your

6   lawyer said, it doesn't matter what the Government's best guess

7   is based on what they put in the Plea Agreement.  The only one

8   who gets to decide what is going to be the sentence in your

9   case is Judge Wexler.  Do you understand that?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  So what is going to happen is you're

12  going to go to the Probation Department and Probation is going

13  to look at all this stuff that I described, all the factors,

14  and they will make a report and submit it to Judge Wexler.

15  He'll look at that report and he will make a reasonable

16  evaluation of your case and decide what sentence is reasonable

17  for you.  It could be more than what's estimate by your lawyer

18  or the Government, it could be less.  Okay?

19              So you now know that if Judge Wexler sentences you to

20  21 months or less you can't appeal that.  If he sentences you

21  to more than that, you can't withdraw your plea but you have

22  the right to appeal the fairness or the reasonableness of that

23  sentence or the propriety of that sentence.  Do you understand

24  that?

25              THE DEFENDANT:  Yes, Your Honor.

11

1      THE COURT:  So one of the things that is important

2  for you to know is well how bad can this get?  And so that's

3  why the Government always includes what the penalties are for

4  the count you're pleading guilty to because there is a

5  limitation to what Judge Wexler can do and the limitation is

6  what is the maximum that the count you're pleading guilty to

7  provides?  So if you look at the first page of the Plea

8  Agreement it tells you what's the maximum or the worst case

9  scenario that can happen to you.  The maximum term of

10  imprisonment is five years, the minimum being zero.

11      There's also a maximum supervised release term that

12  could follow imprisonment.  That would be up to three years of

13  supervised release.  And there's a maximum fine of $250,000.00.

14  It looks like there's no restitution in this case.  There's a

15  $100.00 mandatory assessment.  And you're also subject to

16  criminal forfeiture whatever Judge Wexler determines it to be.

17  Do you understand that?

18      THE DEFENDANT:  Yes, I do, Your Honor.

19      THE COURT:  Okay.  So again, to emphasize this, you

20  have been given certain educated information or guesses about

21  what may happen to you but at the end of the day it's important

22  that you understand that Judge Wexler will be the final arbiter

23  of what is appropriate for your sentence and you have some

24  limited rights to appeal what he does.  But at the end of the

25  day you can't withdraw your plea if you don't like what happens

12

1  to you.  Do you understand that?

2          THE DEFENDANT:  Yes, I do, Your Honor.

3          THE COURT:  All right.  The other thing I wanted to

4  make sure you understand is that when you plead guilty,

5  remember I told you you have the right not to incriminate

6  yourself when you testify?  When you testify -- you don't have

7  to testify because you can refuse.  Remember I discussed that

8  with you?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  But when you enter a plea of

11  guilty, you're going to have to give up that right not to

12  incriminate yourself because one of the things the Court will

13  do is ask you questions or require that you admit what you did

14  so that I can be sure that you are in fact guilty of the crime

15  that you're pleading guilty to and were charged with.  Do you

16  understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  So in answering my questions you would

19  have to give up your right not to incriminate yourself and

20  admit your responsibility and guilt for that crime.  Do you

21  understand?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  Okay.  Now, I discussed a number of

24  things with you.  Some very, very important principles and some

25  issues with respect to sentencing guidelines can get a little

13

1  complicated for somebody who's not used to this.  Did you

2  understand what I explained?

3          THE DEFENDANT:  Yes, I did, Your Honor.

4          THE COURT:  Okay.  Do you have any questions about

5  any of this?

6          THE DEFENDANT:  No, I do not.

7          THE COURT:  So are you willing to give up your right

8  to a trial and the other rights I've just discussed with you?

9          THE DEFENDANT:  Yes, I am, Your Honor.

10          THE COURT:  All right.  And you understand the count

11  in the indictment that you're going to plead guilty to?

12          THE DEFENDANT:  Yes, I do.

13          THE COURT:  Sir, are you ready to enter a plea at

14  this moment?

15          THE DEFENDANT:  Yes, I am.

16          THE COURT:  Mr. Spreer, do you know of any legal

17  reason why the defendant should not be permitted to enter a

18  plea?

19          MR. SPREER:  I don't, Your Honor.  Thank you.

20          THE COURT:  Mr. Dito, are you satisfied with your

21  legal representation up to this point?

22          THE DEFENDANT:  Yes, I am, Your Honor.

23          THE COURT:  All right.  With respect to Count 12 of

24  the indictment, what is your plea?

25          THE DEFENDANT:  Guilty.

14

1              THE COURT:  Are you entering this plea of guilty

2    voluntarily and of your own free will?

3              THE DEFENDANT:  Yes, I am, Your Honor.

4              THE COURT:  Has anyone threatened or forced you to

5    plead guilty?

6              THE DEFENDANT:  No, no one, Your Honor.

7              THE COURT:  No one's threatened you?

8              THE DEFENDANT:  No one threatened me.

9              THE COURT:  Other than the agreement with the

10   Government which we've described on the record -- and by the

11   way, you read that agreement?

12             THE DEFENDANT:  Yes, I did, Your Honor.

13             THE COURT:  Okay.  Has anyone made any promises to

14   you to cause you to plead guilty?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  Has anyone promised you what your

17   sentence is going to be in this case?

18             THE DEFENDANT:  No, Your Honor.

19             THE COURT:  All right.  Then with respect to Count

20   12, did you as charged in Count 12 on or about and between

21   March of 2009 and September of 2009, those being approximate

22   dates, did you within the Eastern District of New York and

23   elsewhere acting as an official and an employee of the State of

24   New York, did you knowingly and intentionally conspire with

25   others to obstruct the enforcement of the criminal laws of the

15

1  State of New York with the intent to facilitate an illegal

2  gambling business, that is the illegal gambling business that

3  was identified in this indictment?  Is that right?  Is that not

4  the count he's pleading guilty to?

5          MR. SPREER:  No, he is pleading guilty to that count,

6  Your Honor.  That's fine, Your Honor.

7          THE COURT:  And did you in furtherance of that

8  conspiratorial agreement, did you, acting again within the

9  Eastern District of New York together with others do one or

10 more of the following overt acts to further that agreement,

11 that is did you on or about August 10, 2009 have a telephone

12 conversation to further the conspiratorial agreement?  Is that

13 the count, the overt act he's acknowledging?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Okay.  Did you have that telephone

16 conversation to facilitate the illegal gambling business that

17 was identified in Paragraph 54 of the indictment?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And you know what 54 says; right?  Let's

20 go over 54.  Referring to Paragraph 54 which appears on Page 26

21 of that indictment, it describes an illegal gambling business

22 where illegal card games were being played at a location

23 described as Rainier Avenue in Ronkonkoma and that that illegal

24 gambling business was operating in violation of the laws of the

25 State of New York.  Do you understand that that's the gambling

16

1  business --

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  -- that you engaged in a conspiratorial

4  agreement to facilitate?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Okay.  All right.  So now tell me in your

7  own words what it is you did, how did you do this, and where in

8  the Eastern District -- it says in 54 that it was in

9  Ronkonkoma, but is that where the business was operating?

10          THE DEFENDANT:  Yes.  I was at my job at work and

11  became aware that there was --

12          THE COURT:  Where was that, by the way?

13          THE DEFENDANT:  Suffolk County Police Department.

14          THE COURT:  Okay.

15          THE DEFENDANT:  And I became aware that there was

16  going to be a search warrant executed at that location.

17          THE COURT:  Being the Rainier Avenue, Ronkonkoma

18  location?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Okay.  And did you know what was going on

21  at that location?

22          THE DEFENDANT:  At that time, at the time that there

23  was a search warrant they told us it was just a gambling

24  operation.

25          THE COURT:  Okay.  So you knew that the search

17

1  warrant was going to be to hit this gambling operation at

2  Rainier in Ronkonkoma; correct?

3            THE DEFENDANT:  Correct, Your Honor.

4            THE COURT:  All right.  So you got advance notice

5  before the search warrant was executed?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Okay.  What did you do?

8            THE DEFENDANT:  At that time, again, bad judgment on

9  my part in thinking that an individual was a friend, I thought

10 that I was calling him as a friend so that he wouldn't be

11 involved in getting arrested at a gambling location.  And at

12 that point I called him and advised him that there was going to

13 be a warrant executed at that location that he was going to be

14 going gambling in.  That was the sum extent of my conversation

15 with him as far as that was concerned.

16           THE COURT:  Okay.  And is that the overt act of the

17 phone call in August that you made?

18           THE DEFENDANT:  That was the one in March.

19           THE COURT:  In March?

20           THE DEFENDANT:  Yes.

21           THE COURT:  All right.  Well, I asked you if you were

22 admitting the overt act of a phone call made in August.

23           THE DEFENDANT:  Yes.

24           THE COURT:  What was the August call?

25           THE DEFENDANT:  That was a general call again that I

18

1   made to him, again not knowing what, if any, kind of

2   affiliation he had with these gambling operations other than

3   being just a gambler there.  I had called him again to tell

4   him, you know, don't go to these places that they're having

5   these -- where you're going to gamble because they're going and

6   doing search warrants at numerous different places.  I didn't

7   know which ones he might be going to.  It was basically just a

8   warning to tell him not to go there so that he wouldn't be

9   involved in any kind of arrest or anything else like that as

10  far as being a participant.

11          THE COURT:  Did you identify the places where you

12  thought he should stay away from?

13          THE DEFENDANT:  In general.  Again, I didn't have

14  specific locations, you know, as far as addresses, just general

15  locations because there were a few known gambling locations

16  within the area.

17          THE COURT:  Okay.  Let me hear from the Government

18  on, first of all, as to the adequacy of the allocution and

19  what's the Government's proof here.

20          MR. MOUSTAKAS:  Yes, Your Honor.  With respect to the

21  first instance that the defendant was discussing, that was an

22  illegal gambling operation located on Orville Drive where he

23  made a phone call to warn that a raid was coming by law

24  enforcement.

25          The second instance that the defendant does discuss

19

1   is the Rainier Avenue illegal operation in Bohemia that was on

2   August 10th that the defendant did make phone calls as well as

3   --

4           THE COURT:  Okay.  So I got that confused.  So

5   Rainier is in Bohemia.

6           MR. MOUSTAKAS:  Yes.

7           THE COURT:  Okay.  And that was an August call?

8           MR. MOUSTAKAS:  Yes.

9           THE COURT:  All right.  Do you acknowledge that, Mr.

10  Dito?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Okay.  So the August call which was the

13  first overt act was the call that you described as alerting

14  your friend --

15          THE DEFENDANT:  The August call would have been --

16          MR. MOUSTAKAS:  The second, Your Honor.  There was a

17  call in March of 2009.

18          THE COURT:  Right.

19          MR. MOUSTAKAS:  And then another set of warrants were

20  to be executed in August and that is when the defendant made a

21  telephone call and was visually observed by law enforcement

22  agents leaving the emergency services barracks and going to a

23  location and meeting with other named, another named

24  codefendant.

25          THE COURT:  Okay.  Now remind me, what happened in

20

1   March?  What was the March call for?

2          MR. MOUSTAKAS:  March, Your Honor, there was a search

3   warrant to be executed by the Suffolk County Police Department

4   and a tip was given that the raid was happening and the

5   occupants of that gambling location left --

6          THE COURT:  Okay.

7          MR. MOUSTAKAS:  -- before the execution of the

8   warrant.

9          THE COURT:  So you made both calls, Mr. Ditto, the

10  March call and the August call?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  With knowledge that you were tipping

13  somebody about a search warrant that would be executed?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And you understood that by doing that it

16  would facilitate the gambling operation or at least prevent the

17  Government from enforcing and the state from enforcing the law?

18         THE DEFENDANT:  Yes, Your Honor.  I should have

19  thought about that a lot harder than I did when I initially

20  made those phone calls.

21         THE COURT:  Okay.  All right.  Then based on the

22  information that's been given to me, I find that you, Mr. Dito,

23  are acting voluntarily and that you fully understand your

24  rights and the consequences of this plea and that there is a

25  factual basis for it.  I therefore accept the plea to Count 12

21

1   of this indictment.  I'll recommend that Judge Wexler do the

2   same.  What are we doing with any applications with respect to

3   bail and do we have a date for sentence?  We have no sentence

4   date.

5           MR. MOUSTAKAS:  We have no sentence date, Your Honor,

6   and we would consent to the same custody status.  The defendant

7   has a bail package.

8           THE COURT:  So same bail conditions are continued.

9   Anything else I have to address?

10          MR. MOUSTAKAS:  Not at this time, Your Honor.

11          THE COURT:  All right.  Well, Mr. Spreer, it was good

12  to see you.

13          MR. SPREER:  Good to see you, Your Honor, absolutely.

14          THE COURT:  Okay.  Thank you.

15          MR. MOUSTAKAS:  Thank you, Your Honor.

16                      [Off the record.]

17          THE COURT:  Go back on the record.  I should have

18  asked you this before but I can ask it now, but I want to make

19  sure Mr. Dito, you understand that Judge Wexler is going to be

20  the one who sentences you.  I told you that.

21          THE DEFENDANT:  Yes.

22          THE COURT:  But you had the absolute right to wait

23  for Judge Wexler to take your plea.  Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  All right.  But I understand that he was

22

1  occupied and that you agreed then to come to me to take your

2  plea; is that right?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  All right.  But you still understand that

5  he could take your plea and that you can insist on that.  Do

6  you understand that?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Okay.  All right.  Thank you.

9           MR. SPREER:  Thank you.

10                      * * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23

1        I certify that the foregoing is a court transcript from an

2    electronic sound recording of the proceedings in the above-

3    entitled matter.

4

5    _____

6                            Mary Greco

7    Dated:   July 16, 2011